

FILED BY_____ D.C.

MAR 0 3 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

---

**KERRY LUTZ,**
an individual resident of the State of Florida,

Case No. _____

Plaintiff,

v.

**TOWN OF PALM BEACH; CITY OF BOCA RATON; CITY OF WEST PALM BEACH; CITY OF RIVIERA BEACH; CITY OF DELRAY BEACH; CITY OF FORT LAUDERDALE; PARKMOBILE, LLC; PAYBYPHONE US INC.; ONE PARKING LLC, JOHN DOES 1–75** (additional Florida municipalities and third-party parking technology providers employing substantially identical parking enforcement architectures),

Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Kerry Lutz brings this action for declaratory and injunctive relief to halt and remediate a uniform, app-centric municipal parking enforcement architecture that conditions lawful parking on compelled participation in third-party payment and data-collection systems without providing MUTCD-compliant notice, ADA-compliant access, or a realistic, consent-neutral alternative—thereby depriving the public of due process and equal protection and imposing unlawful compelled agency and contracting as a condition of compliance with the law.

## I. INTRODUCTION

1.  This case challenges a uniform municipal parking enforcement architecture that conditions compliance with local parking regulations on compelled participation in a

third-party digital payment platform without providing constitutionally adequate notice or a consent-neutral alternative method of compliance.

2. Plaintiff does not challenge the authority of municipalities to regulate parking, set fees, or enforce time restrictions.

3. Plaintiff challenges the conditioning of lawful parking on mandatory interaction with private parking-technology providers through mobile applications, kiosk-mediated systems, or account-based telephone systems that require entry of personal and vehicle-identifying information and acceptance of standardized third-party terms of service.

4. Across Defendant municipalities, paid parking compliance is operationally dependent upon use of a third-party platform that records license plate data, processes electronic payment, and transmits compliance status to the enforcing authority.

5. In certain municipalities, including the Town of Palm Beach, traditional kiosks and cash payment options have been eliminated, leaving mobile application enrollment as the sole practical means of lawful compliance.

6. Even where kiosks nominally remain, they function as extensions of the same third-party backend architecture and require electronic payment and plate entry.

7. Plaintiff alleges that this enforcement structure is implemented without uniform regulatory signage conforming to the Florida-adopted Manual on Uniform Traffic Control Devices ("MUTCD").

8. Plaintiff further alleges that enforcement predicated upon non-conforming regulatory signage deprives drivers of constitutionally sufficient notice prior to the imposition of fines and penalties.

9. The constitutional question presented is whether a municipality may enforce parking penalties where lawful compliance is operationally dependent upon participation in a third-party digital platform and where regulatory notice does not satisfy governing federal and state standards.

10. Plaintiff seeks declaratory and injunctive relief to require constitutionally adequate notice and the provision of a consent-neutral alternative method of compliance prior to continued enforcement.

## II. JURISDICTION AND VENUE

11 .This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including the Fourteenth Amendment to the United States Constitution.

12. This Court is authorized to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Federal Rule of Civil Procedure 65.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because each Defendant municipality is located within the Southern District of Florida, a substantial part of the events or omissions giving rise to the claims occurred within this District, and the challenged parking enforcement architecture is implemented and enforced within this District. The private Defendant parking-technology providers transact business within this District and provide services to the municipal Defendants here in connection with the enforcement practices challenged in this action.

## III. PARTIES

## A. Plaintiff

14. • **Plaintiff KERRY LUTZ** ("Lutz") is a natural person and a resident of Palm Beach County, Florida. Lutz regularly parks vehicles in the Defendant municipalities and is directly subject to the challenged parking enforcement practices, including the assessment of fines and the extraction of private data via non-compliant, uncertified Traffic Control Devices in violation of **Fla. Stat. § 316.0745(4) and (6).**

15. • Lutz is the Founder, Director, and a member of the **NATIONAL ASSOCIATION OF AMERICAN DEFRAUDED PARKERS ("NAADP")**, an unincorporated association organized under the laws of the State of Florida.

16. • The NAADP is a nationwide membership association whose mission includes documenting systemic parking practices that deprive the public of due process, lawful

3

notice, and access—including violations of the **2024 DOJ Final Rule on the Accessibility of Web Information and Services (ADA Title II)**.

17. • While Lutz appears in this action *pro se* in his individual capacity, he formally notifies the Court and the Defendants that the NAADP maintains associational standing to address these systemic violations.

18. Lutz and the NAADP reserve the right to join the association as a co-plaintiff via an Amended Complaint upon the appearance of licensed counsel.

## B. Defendants

19. Defendant Town of Palm Beach is a Florida municipality located within the Southern District of Florida that enforces parking regulations and collects parking fees using app-centric systems and has no alternative payment systems available . Service of process may be effected upon **Kelly Churney, Town Clerk**, or the Mayor, at its principal government office located at **360 S. County Road, Palm Beach, FL 33480.**

20. Defendant City of Boca Raton is a Florida municipality located within the Southern District of Florida that enforces parking regulations using app-centric and kiosk-mediated systems. Service of process may be effected upon **Mary Siddons, City Clerk**, or the Mayor, at its principal government office located at **201 West Palmetto Park Road, Boca Raton, FL 33432**

21. Defendant City of West Palm Beach is a Florida municipality located within the Southern District of Florida that enforces parking regulations using app-centric and kiosk-mediated systems. Service of process may be effected upon **Shaquita Edwards, City Clerk**, or the Mayor, at its principal government office located at **401 Clematis Street, West Palm Beach, FL 33401.**

22. Defendant City of Riviera Beach is a Florida municipality located within the Southern District of Florida that enforces parking regulations using app-centric and kiosk-mediated systems. Service of process may be effected upon **Debrah Hall, City Clerk**, or the City Manager, at its principal government office located at **600 W. Blue Heron Blvd., Riviera Beach, FL 33404.**

23. Defendant City of Delray Beach is a Florida municipality located within the Southern District of Florida that enforces parking regulations using app-centric and kiosk-mediated

systems. Service of process may be effected upon **Alexis Givings, City Clerk**, or the Mayor, at its principal government office located at **100 NW 1st Avenue, Delray Beach, FL 33444**.

24. Defendant City of Fort Lauderdale is a Florida municipality located within the Southern District of Florida that enforces parking regulations using app-centric and kiosk-mediated systems. Service of process may be effected upon **David Soloman, City Clerk**, or the Mayor, at its principal government office located at **1 East Broward Blvd., Suite 444, Fort Lauderdale, FL 33301**.

25. **Defendant PARKMOBILE, LLC** is a foreign limited liability company authorized to do business in Florida. Service of process may be effected upon its Registered Agent, **CORPORATION SERVICE COMPANY**, at 1201 Hays Street, Tallahassee, FL 32301. ParkMobile is a parking-technology provider that contracts with municipalities, operates mobile applications, kiosks, and telephone payment systems, processes transactions, collects and retains data, and transmits compliance information used for enforcement within this District.

**Defendant PAYBYPHONE US INC.** is a foreign corporation authorized to do business in Florida. Service of process may be effected upon its Registered Agent, **CORPORATION SERVICE COMPANY**, at 1201 Hays Street, Tallahassee, FL 32301. PayByPhone is a parking-technology provider that contracts with municipalities, operates mobile applications, kiosks, and telephone payment systems, processes transactions, collects and retains data, and transmits compliance information used for enforcement within this District.

**Defendant ONE PARKING LLC** is a domestic limited liability company. Service of process may be effected upon its Registered Agent, **REGISTERED AGENT SOLUTIONS, INC.**, at 1200 South Pine Island Road, Plantation, FL 33324. One Parking is a parking-technology provider that contracts with municipalities, operates mobile applications, kiosks, and telephone payment systems, processes transactions, collects and retains data, and transmits compliance information used for enforcement within this District.

26. Defendants JOHN DOES 1–75 are additional Florida municipalities, municipal subdivisions, enforcement entities, and third-party parking-technology providers whose identities are presently unknown to Plaintiff but who employ or participate in substantially identical app-centric parking enforcement architectures as described herein.

27. Upon information and belief, JOHN DOES 1–75 include:

28. (a) Florida municipalities that condition paid parking compliance on participation in third-party digital payment platforms;

29. (b) municipal contractors or agents responsible for implementing, administering, or enforcing such app-centric parking systems;

30. (c) parking-technology providers operating mobile applications, kiosks, backend compliance databases, or account-based telephone payment systems used to process transactions and transmit enforcement status; and

31. (d) affiliated entities involved in data processing, compliance verification, citation issuance, or revenue-sharing arrangements arising from such systems.

## IV. FACTUAL ALLEGATIONS

### A. The App-Centric Parking Architecture

22. Defendants have adopted parking systems that require drivers to pay via a mobile application, telephone interface, or physical kiosk operated by a parking-technology provider.

23. Regardless of interface, the transaction requires entry of a license plate number and transmits payment and compliance data through a unified backend used for enforcement.

24. The provider records time, location, plate identifier, and compliance status, and shares this information with the enforcing municipality.

### B. The Kiosk Is Not a True Alternative

25. Physical kiosks do not provide a consent-neutral alternative. They are operated by the same provider and require the same data inputs and backend processing as the mobile application.

26. Even where a kiosk nominally accepts coins, it does not accept bills and presumes access to rolled coins or obsolete denominations; many kiosks omit coin acceptance entirely.

27. Kiosk use therefore requires electronic payment and plate entry, establishing at minimum an implied contractual relationship or agency relationship imposed as a condition of lawful parking. In the Town of Palm Beach, Defendant has gone further: kiosks have been completely eliminated and cash payment discontinued, rendering the mobile application the sole means of paying for on-street parking. Lawful parking is now conditioned exclusively on downloading the app, creating an account, entering personal and vehicle data, and agreeing to the provider's terms of service — including arbitration clauses, data sharing, and behavioral profiling — under threat of fines, booting, or towing.

## C. Telephone Payment Is Not a Walk-Up Option

28. Advertised telephone payment options function only for users with pre-existing accounts and do not permit first-time, walk-up compliance without prior enrollment.

29. Telephone payment thus presupposes acceptance of provider terms and does not offer a risk-free option for minors or first-time users.

## D. Compelled Agency and Contracting

30. The parking-technology provider functions as an agent of the municipality for fee collection, compliance verification, and enforcement signaling.

31. Simultaneously, the provider functions as an agent for the driver/parker by transmitting payment and representing compliance status to the municipality.

32. This dual agency is imposed as a condition of lawful parking and is not the product of voluntary negotiation. In fully app-centric zones such as the Town of Palm Beach, where no kiosks or cash options remain, drivers have no realistic alternative but to enter into the provider's standardized contract. The absence of any consent-neutral option renders the arrangement coercive and constitutionally suspect.

## E. Lack of MUTCD-Compliant Notice

7

33. Defendants enforce parking regulations without uniform MUTCD-compliant regulatory signage conveying rules, times, methods of payment, and consequences of non-compliance.

34. App logos, QR codes, and informal signage are used in place of standardized regulatory signs, depriving drivers of constitutionally sufficient notice.

## F. ADA and Access Implications

35. The system imposes barriers to access for individuals with disabilities by requiring interaction with digital interfaces without providing uniform, accessible alternatives.

36. Selective remediation cannot cure these systemic barriers.

## G. Minors, Capacity, and Non-Consensual Waiver of Rights

37. The enforcement architecture applies uniformly without inquiry into age or legal capacity.

38. Minors are required to use systems governed by standardized terms of service imposed by parking-technology providers, under the threat of penalties: including ticketing, booting and vehicle towing as well potential action against their license and vehicle registration.

39. Minors lack capacity to consent to arbitration or waive constitutional, privacy rights or the right to participate in class-action lawsuits.

40. No parental consent or capacity verification is provided within the app or through any other means.

41. Enforcement proceeds notwithstanding this lack of lawful consent.

## H. Systemic Data Collection and Location Monitoring

42. Defendants require collection and sharing of personal and location-derived data as a condition of lawful parking.

43. License plates function as persistent identifiers.

44. Each transaction records time and location of physical presence.

45. Data is processed and shared with municipalities, enforcement entities and numerous other parties, both known and unknown to the plaintiff.

46. The regime applies to minors without parental notice or consent.

47. Participation is compelled, not voluntary.

48. This constitutes an independent constitutional injury.

## I. Courthouse-Adjacent Enforcement (West Palm Beach)

49. The City of West Palm Beach has eliminated traditional regulatory signage (R7 Enforcement Signs) near the Paul G. Rogers Federal Courthouse.

50. Enforcement occurs without clear notice as mandated by Florida's adoption of the MUTCD.

51. Jurors, litigants, and minors are affected.

52. Due process and access to courts are impaired.

53. ADA access is implicated.

54. Photographic exhibits document these conditions.

55. Enforcement continues regardless.

56. While Defendants other than the Town of Palm Beach have not fully eliminated alternative payment methods, namely kiosks or in the case of the City of West Palm Beach, parking meters, due to the nature of increased parking fees, minimal fees are collected in cash, even when this is an option. Paying in cash can require long walks in inclement weather and in many cases is impractical.

57. Plaintiff Kerry Lutz has parked vehicles within each Defendant municipality hundreds of times over the past decade.

58. As a direct result of the challenged enforcement architecture:

59. Plaintiff has paid substantial parking fees through Defendant-affiliated mobile applications and kiosk systems that were presented as mandatory conditions of lawful parking.

60. Plaintiff has paid parking citations issued under threat of escalating fines, vehicle immobilization (booting), towing, late penalties, and potential impact to vehicle registration.

61. Plaintiff has paid such sums in reliance on regulatory signage and enforcement representations that did not conform to the Florida-adopted Manual on Uniform Traffic Control Devices and therefore did not constitute lawful traffic control devices.

62. In the Town of Palm Beach, Plaintiff was directly compelled to download and use a third-party mobile application as the sole practical means of lawful parking, as kiosks and cash options had been eliminated.

63. In the remaining Defendant municipalities, although certain theoretical alternatives nominally existed, those alternatives were impractical, significantly burdensome, or functionally unavailable, rendering use of the mobile application the only realistic means of compliance.

64. Plaintiff has therefore been compelled to enter into standardized third-party contractual relationships, transmit personal and vehicle-identifying data, and accept private arbitration clauses as a condition of avoiding fines and penalties that could not be levied subject to lack of sufficient notice.

65. Plaintiff has suffered economic injury in the form of parking fees, citation payments, service charges, and related costs paid under an enforcement regime predicated on non-conforming regulatory notice.

66. Plaintiff continues to park in Defendant municipalities and remains subject to the same enforcement architecture, creating a credible threat of future injury.

67. Plaintiff's injuries are concrete, particularized, ongoing, and fairly traceable to Defendants' implementation and enforcement of the challenged parking system. Plaintiff intends to continue parking within Defendant municipalities and therefore faces a real and immediate threat of repeated enforcement under the challenged system.

## V. CLAIMS FOR RELIEF

### COUNT I – Declaratory Relief (Due Process)

68. Defendants deprives Plaintiff of due process through coercive, notice-deficient enforcement.

69. An actual controversy exists.

**COUNT II – Declaratory Relief (Equal Protection)**

70. Non-uniform notice results in arbitrary enforcement.

71. Declaratory relief is required.

**COUNT III – Injunctive Relief**

72. Ongoing harm is irreparable.

73. Injunction is warranted.

**COUNT IV – Declaratory and Injunctive Relief (Florida Digital Bill of Rights)**

74. Defendants' data practices violate Florida law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare Defendants' practices unconstitutional;

B. Enjoin enforcement until lawful compliance is achieved;

C. Award fees and costs where authorized;

D. Grant further relief as just.

**JURY DEMAND**

Plaintiff demands trial by jury on all triable issues.

Respectfully submitted,

Kerry Lutz
Plaintiff, Pro Se

305 Eagleton Estate Drive

Palm Beach Gardens, Florida 33418

561-408-4444