**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:26-cv-80210-CANNON

FILED BY _____ D.C.

MAY 0 4 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**KERRY LUTZ,** an individual resident of the State of Florida,

Plaintiff,

v.

**TOWN OF PALM BEACH, et al,**

Defendants.

_____/

## EXPEDITED MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

### I. Expedited Certification

Pursuant to Local Rule 7.1(d), Plaintiff respectfully requests expedited consideration of this Motion for Preliminary Injunction and asks that the Court rule on or before May 5, 2026. Expedited treatment is warranted because the challenged parking-enforcement regime remains in active daily operation, and the resulting burden on lawful courthouse access is continuing rather than speculative. Each additional day preserves the alleged denial of access and exposes Plaintiff to further enforcement under the challenged system rather than restoring the pre-violation status quo. Plaintiff submits that shortened consideration under Local Rule 7.1(d) is appropriate.

### A. Introduction

This expedited motion seeks immediate injunctive relief because the challenged parking-enforcement regime is operating now, in the streets immediately surrounding this Court. Plaintiff

Kerry Lutz is a senior citizen and pro se litigant who regularly travels to the federal courthouse and must navigate the parking-enforcement infrastructure operated by the named Defendant City of West Palm Beach on Clematis Street and the surrounding streets within walking distance of the courthouse — streets where members of the public reasonably park when conducting business with this Court. His exposure is not isolated or historical — it recurs with each necessary visit to what this motion designates the *Due Process Free Parking Zone*: the courthouse-adjacent streets where enforcement proceeds under devices that fail every applicable MUTCD conformity standard.

This motion proceeds on two independent grounds, each sufficient to warrant immediate relief. First, Plaintiff challenges the physical sign assembly as a statutory wrong: the two-sticker configuration fails mandatory MUTCD content, mounting-height, and retroreflectivity requirements, constituting a public nuisance per se under Fla. Stat. § 316.077 that is subject to immediate abatement. Second, Plaintiff challenges the same parking-enforcement system as an ADA Title II physical barrier that denies meaningful access to courthouse parking for persons with physical infirmities or visual challenges. Plaintiff, as a senior citizen, is himself directly affected by this ongoing operation. While he can personally see and read the sticker assemblies, he has observed firsthand on numerous occasions that others — including elderly persons and those with physical infirmities or visual challenges — cannot safely approach or read a curb-level sticker affixed well below the MUTCD minimum mounting height.

This motion seeks targeted, immediate relief for the Due Process Free Parking Zone only. Whether the same enforcement deficiency applies throughout the balance of the Southern District of Florida is a question for the Court to address in subsequent proceedings. Because enforcement continues around the courthouse today, the Court should act now to preserve the pre-violation

status quo. In a system that depends on uniformity, visibility, and lawful authorization, the regulatory intent must point in one direction only: compliance.

**B. Statement of Facts**

1.      As reflected in the Declaration of Kerry Lutz and its attached exhibits, Plaintiff regularly parks in the courthouse area when making filings, and the events relevant to this motion arise from that recurring use of the parking facilities adjacent to the Paul G. Rogers Federal Courthouse in West Palm Beach. (Declaration of Kerry Lutz).

2.      At the enforcement locations operated by the Defendant City of West Palm Beach, Plaintiff personally observed and photographed posted ParkMobile Zone WP 8444 signage. The sign assembly at issue consists of two stickers affixed to the same vertical pole: a white regulatory sticker stating enforcement hours, days, and time limit ("METERS ENFORCED 7 DAYS A WEEK 7AM TO 7PM. 4 HOUR MAX"), and a green ParkMobile-branded sticker identifying Zone WP 8444 — both mounted below the MUTCD 7-foot minimum mounting height for regulatory signs. Neither sticker meets the MUTCD R7 series minimum dimensional standard of 12 inches by 18 inches, incorporated into Florida law through Fla. Stat. § 316.0745(3), which governs all parking regulatory signs on conventional roads. The physical meter units present at this enforcement location compound this barrier further. As reflected in Exhibit A-1, the LCD display screens on the meter heads are low-contrast and weathered, rendering them effectively unreadable under normal daylight conditions for persons with reduced visual acuity. A person excluded from reading the white regulatory sticker by its placement height faces the identical accessibility failure when attempting to use the physical meter as an alternative payment method. The ADA does not permit a public entity to satisfy its accessibility obligations by offering multiple payment options that are each independently inaccessible to the same population.

3

3.      Plaintiff Kerry Lutz is a senior citizen. He is personally and directly affected by the ongoing parking-enforcement operations conducted by the Defendants at the enforcement locations described in this motion. While Plaintiff is able to see and read the two-sticker assemblies under normal conditions, he has personally observed that numerous other individuals at these same locations — including elderly persons, persons with physical infirmities, and persons with visual challenges — encounter significant difficulty safely approaching and reading a curb-level sticker assembly mounted below the MUTCD minimum height for regulatory signs. (Declaration of Kerry Lutz, §§ 4-5).

4.      On June 30, 2025, FDOT issued Engineering and Operations Memorandum No. 25-01, which states: "This Memorandum highlights Department policy, Florida Administrative Code (FAC, Rule 14-15) requirements, and Florida Statute (F.S. 316.0745) requiring all traffic control devices, including pavement surface markings, be compliant with the FDOT Design Manual (FDM) and the Manual of Uniform Minimum Standards for Design, Construction, and Maintenance for Streets and Highways."

5.      The same FDOT memorandum further directs: "Any identified non-compliant traffic control devices or pavement markings currently installed on Florida public roads are to be immediately remedied, i.e., removed, modified or replaced as required for conformity with FDOT Policy and Standards," signed by Will Watts, P.E., Chief Operating Officer and Assistant Secretary.

**C. Legal Standard**

A preliminary injunction is warranted only where the movant makes a clear showing on all four traditional equitable factors. The Supreme Court has stated the governing rule in exact terms: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In this Circuit, the same four-part test controls. A plaintiff must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat that [he] will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to [him] outweighs the threatened harm an injunction may cause the defendant; and (4) granting the injunction would not disserve the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

The irreparable-harm requirement is indispensable, not optional. As the Eleventh Circuit explained, "A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Where the challenged conduct consists of ongoing statutory and constitutional violations, the Eleventh Circuit recognizes that irreparable injury is established because the loss of legal rights during continued enforcement cannot be fully repaired after the fact. Thus, if Plaintiff demonstrates a continuing public nuisance per se or an ongoing physical barrier that denies equal access, the Court may preserve the pre-violation status quo through immediate preliminary relief.

**D. Argument A — Public Nuisance Per Se: The Two-Sticker Assembly Violates Fla. Stat. § 316.077 and Must Be Immediately Abated**

The white sticker is an unauthorized traffic-control device under Fla. Stat. § 316.077, and the statute itself commands the remedy. Section 316.077(1) provides that "[n]o person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic control device … or which attempts to direct the movement of traffic." Fla. Stat. § 316.077(1). The Legislature then

removed any doubt about consequence or timing: "Every such prohibited sign, signal or marking is declared to be a public nuisance and the authority having jurisdiction over the highway is empowered to remove the same or cause it to be removed without notice." Fla. Stat. § 316.077(4). That is a self-executing abatement rule. If the device is unauthorized and purports to regulate traffic, nuisance status follows from the violation itself, and immediate removal — not continued tolerance — is the statutory answer.

The MUTCD, which Florida has adopted through Fla. Stat. § 316.0745 and 23 C.F.R. § 655.603 as the mandatory national standard for all traffic control devices, specifies in its R7 series the precise content, format, and physical construction requirements for lawful parking regulation signs. Under MUTCD Section 2B.50, a parking regulation sign must display on its face, as an integrated unit: (1) the specific restriction being imposed; (2) the days on which enforcement applies; (3) the hours during which enforcement applies; and (4) the applicable payment method and fee information. All required elements must appear on a single, integrated physical sign face. The MUTCD does not permit the distribution of required regulatory content across separate stickers, QR codes, or commercial app overlays. In addition to content requirements, MUTCD Section 2A.08 mandates that all regulatory signs "shall be retroreflective or illuminated to show the same shape and similar color both day and night." This retroreflectivity requirement is not a design preference — it is a mandatory conformity standard that Florida has adopted by statute. Fla. Stat. § 316.0745(3) requires all official traffic control devices purchased and installed in this state to conform to the FDOT manual and specifications, which incorporate the MUTCD retroreflectivity standard as a condition of conformity. A parking sign that omits any required content element, that delegates required content to a separately maintained commercial layer, or that is not fabricated with retroreflective sheeting is not a conforming R7 regulatory sign and

6

therefore cannot constitute an official traffic control device under Fla. Stat. § 316.003(50) or § 316.0745.

The MUTCD further mandates a minimum mounting height of seven feet above the adjacent pavement surface for all regulatory signs. MUTCD Section 2A.18. This is a mandatory conformity standard, not a guideline. Florida has adopted it by reference through § 316.0745(3), which requires all official traffic control devices installed in this state to conform to the Department's manual and specifications — specifications that incorporate the MUTCD seven-foot mounting height as a mandatory minimum. A regulatory sign mounted below seven feet fails conformity from the moment of installation. The message the sign displays is irrelevant: a below-height installation is a non-conforming device under both Florida and federal law, and a non-conforming device is not an official traffic control device within the meaning of Fla. Stat. § 316.003(50).

The two-sticker assembly fails the content, mounting-height, and retroreflectivity requirements independently and on its face. As to content: the white sticker — stating "METERS ENFORCED 7 DAYS A WEEK 7AM TO 7PM. 4 HOUR MAX" — recites enforcement hours and a time limit but contains no payment information on its face. Payment is delegated entirely to the green ParkMobile Zone WP 8444 sticker, which is a commercial overlay created and maintained by a private vendor, not a certified regulatory sign. Two non-conforming stickers do not combine to form one conforming sign. As to mounting height: Plaintiff observed and photographed both stickers mounted well below the MUTCD's seven-foot minimum — at approximately waist height in an active parking lane. As to retroreflectivity: the two stickers are ordinary adhesive commercial labels, not fabricated from the engineered retroreflective sheeting material required by MUTCD Section 2A.08 and incorporated into Florida law through Fla. Stat.

§ 316.0745(3). A device lacking the required retroreflective material is non-conforming under both the MUTCD and Florida law independently of any question about its content or mounting height. Because the assembly fails all three requirements independently, it is a non-conforming device as a matter of law, and its use to regulate and enforce parking is unauthorized within the meaning of § 316.077(1).

FDOT's own June 30, 2025 directive confirms that **all** traffic-control devices must conform to uniform standards, without exception. That agency directive matters here because the challenged assembly is not a private communication or a decorative label. It is a public-facing roadside directive installed at an active curbside parking location and used to control how long motorists may occupy the space and when meter enforcement applies. Under Florida's statutory scheme, such a message must exist as a lawful, conforming traffic-control device. If it does not, § 316.077 treats it as prohibited.

The record shows precisely that kind of public-facing regulatory message. Plaintiff personally observed and photographed the courthouse-adjacent parking assembly, and the image shows: "YOUR PARKING ZONE#: WP 8444 ParkMobile PARKING mobile MADE SIMPLE WEST PALM S METERS ENFORCED DAYS A WEEK." (Exhibit A). Those facts establish that the white sticker is the operative regulatory component of the two-sticker assembly. It does not merely identify a payment vendor. It purports to impose enforcement terms on motorists using a public roadway parking space. A device that announces meter-enforcement conditions and time limits necessarily "attempts to direct the movement of traffic" within the meaning of Fla. Stat. § 316.077(1), because it dictates whether a driver may stop, how long the driver may remain, and under what enforcement window the space may be used.

Once that statutory trigger is met, the nuisance question is over. Section 316.077(4) does not require proof of accident history, monetary loss, or a separate showing of actual damages before abatement may occur. The Legislature has already made the policy determination by declaring every prohibited device a "public nuisance." Fla. Stat. § 316.077(4). The Court therefore need not defer to a routine maintenance cycle or await future citations. EOM 25-01 directs that non-compliant traffic control devices "are to be immediately remedied, i.e., removed, modified or replaced." Under both the statute and FDOT's own operational instruction, a non-compliant roadside traffic-control installation is to be corrected immediately. The appropriate preliminary relief is immediate abatement of the two-sticker assembly's regulatory message and restoration of the pre-violation status quo pending final adjudication.

**E. Argument B — ADA Title II Physical Barrier: The Two-Sticker Assembly Denies Disabled and Elderly Persons Meaningful Access to the Courthouse**

The challenged two-sticker assembly states a substantial Title II violation because courthouse access is not limited to the courtroom threshold; it includes the practical means by which a person can lawfully arrive, park, and enter to file papers or attend proceedings. Title II's operative command is direct: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has applied that command broadly, holding that "Title II prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Here, the parking-control system immediately adjacent to the federal courthouse is part of the way courthouse users obtain practical access to judicial services. When the governing parking rule is

delivered through a physically inaccessible curbside sticker assembly, the public entity's "operation" of courthouse access ceases to be equal for persons with physical infirmities or visual challenges.

The physical barrier is especially acute at a courthouse. A nondisabled user may be able to step toward the curb, move close to the pole, and sort out the regulatory text on the white sticker. A person with physical infirmities or visual challenges may be unable to do so safely or at all. Plaintiff is himself a senior citizen who is directly and personally affected by this ongoing parking operation. While Plaintiff can personally see and read the sticker assemblies when he approaches them under normal conditions, he is a direct witness to and participant in the same parking system that creates these barriers for others. He has personally observed at these enforcement locations that elderly persons and persons with physical infirmities or visual challenges cannot safely position themselves to read a curb-level sticker in an active parking lane. Title II does not permit a public entity to structure access so that only those who can physically approach and read curb-level instructions can determine how to lawfully park and proceed to court.

The preferred ParkMobile app-only payment requirement compounds the physical barrier. A person who cannot safely read the controlling curbside text is left unable to determine which payment option governs, and therefore unable to secure parking on equal terms before entering the courthouse. The City of West Palm Beach cannot avoid Title II by characterizing the defect as a parking detail rather than a courthouse-access issue. Under *Tennessee v. Lane*, 541 U.S. 509 (2004), Title II applies to the operation of public services, and access to courts is among the core governmental functions the statute protects. A physically inaccessible two-sticker assembly at the courthouse approach is therefore a barrier to the judicial service itself, because it denies persons with physical infirmities or visual challenges an equal opportunity to lawfully park and reach the

courthouse. Plaintiff seeks only prospective injunctive relief: to enjoin enforcement of this inaccessible curbside scheme unless and until Defendants provide a physically accessible means for courthouse users to ascertain and comply with the governing parking rules.

### F. Irreparable Harm

Plaintiff has established irreparable harm because the challenged regime is not a completed past event; it is operating now, it is being enforced now, and it continues to burden Plaintiff's present access to court and his freedom from unlawful traffic-control enforcement. Florida law treats that ongoing condition as requiring immediate cessation, not delayed repair. Section 316.077 provides that an unauthorized sign or device that purports to function as an official traffic control device is prohibited, and that "[e]very such prohibited sign, signal or marking is declared to be a public nuisance" that may be removed "without notice." Fla. Stat. § 316.077(4). Section 316.0745 likewise makes nonconforming traffic-control devices "unlawful" and requires the public agency to "immediately bring it into compliance with the requirements of this section or remove said device." Fla. Stat. § 316.0745(7). When the governing statutes command immediate compliance or removal, continued enforcement under the same regime is itself continuing harm.

That harm is concrete and recurring here. Plaintiff is a senior citizen who regularly uses the parking facilities operated by the Defendants in connection with his pro se litigation in this Court, and who faces renewed exposure to the same enforcement architecture with each return visit. Defendants have continued to enforce citations against the general public — and against Plaintiff personally — well past FDOT's June 30, 2025 directive requiring immediate remediation of noncompliant devices. Because the statutory command is to bring a noncompliant device "immediately" into compliance or remove it, Fla. Stat. § 316.0745(7), every day of continued enforcement compounds the violation. The threat is not speculative — the sign architecture

remains unchanged, the enforcement personnel remain deployed, and Plaintiff's use of the affected areas is ongoing and necessary.

The resulting harm cannot be reduced to money damages. Each day the challenged regime remains in place compounds two non-compensable injuries at once: ongoing statutory injury from enforcement under an unlawful device, and present deterrence to a pro se senior-citizen litigant's practical access to court. A later refund or damages award cannot restore the lost ability to approach the courthouse free of recurring unlawful enforcement. Preliminary relief is therefore necessary now.

### G. Balance of Equities

The balance of equities favors immediate preliminary relief because the requested injunction would require Defendant to do only what the law already demands: cease enforcement under the challenged parking-control assembly and restore the pre-violation status quo while this case is adjudicated. The Supreme Court has emphasized that "[t]he first two factors of the traditional standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Where, as here, Plaintiff has shown a substantial likelihood of success on independent legal theories and ongoing irreparable harm, the remaining hardship inquiry is straightforward: Defendant has no cognizable equitable interest in continuing an enforcement regime that Plaintiff has shown is unlawful and physically inaccessible.

Any burden on Defendant is administrative and financial only. If the Court grants relief, Defendant may suspend enforcement, remove or cover the challenged stickers, or install conforming and accessible traffic-control signage while preserving lawful parking management. Those are ordinary compliance measures, not legal prejudice. By contrast, denying relief leaves Plaintiff exposed to continuing enforcement consequences and continuing interference with access

12

to courthouse parking during the pendency of this action. The harm to Plaintiff is immediate and recurring, while the burden to Defendant is only the temporary obligation to stop using a challenged device until legality and accessibility are assured.

### H. Public Interest

The public interest strongly favors an injunction because the relief requested does not suspend a lawful public program; it restores the pre-violation status quo and requires that any parking enforcement affecting courthouse access proceed only through lawful, accessible means. The public has no legitimate interest in the continued operation of an enforcement regime imposed without valid legal authority, through devices that are challenged as unlawful, or in a manner that denies equal physical access to disabled and elderly users. By contrast, the public does have a compelling interest in ensuring that government enforcement is grounded in law, that access to public facilities is physically accessible, and that municipal parking systems operate through valid notice rather than void mechanisms.

The requested injunction also serves the public interest because it is narrow. Plaintiff does not seek to disable lawful parking management. He seeks only to prevent continued enforcement of the challenged regime until the Court can determine whether Defendants are acting with lawful authority and in a manner consistent with accessibility requirements. Requiring a municipality to use legally valid and physically accessible means of regulation does not harm the public — it protects the public from unlawful citations, protects disabled and elderly persons seeking access to courthouse parking, and ensures that public revenue is not collected through mechanisms that are alleged to be void.

### I. Plaintiff's Supplemental Contention Regarding APL Certification

Plaintiff further notes that a search of the FHWA Approved Products List returned zero parking signs certified for use in Florida. (Declaration of Kerry Lutz, Ex. G-1). To the extent Florida Statute § 316.0745 requires pre-sale certification of traffic control devices as a predicate to lawful enforcement, Defendants cannot demonstrate that the signs at issue have ever met that requirement. Plaintiff preserves this contention for further proceedings.

**J. Relief Requested**

Because the challenged enforcement system is presently being applied within the Due Process Free Parking Zone — the streets within walking distance of the Paul G. Rogers Federal Courthouse, 701 Clematis Street, West Palm Beach, Florida, including Clematis Street and the surrounding streets where members of the public reasonably park when conducting business with this Court — and because Plaintiff's exposure is ongoing and will recur with each necessary visit to this building, immediate equitable relief is necessary. Plaintiff respectfully requests that the Court enter a preliminary injunction and related expedited relief as follows:

1.      Defendant City of West Palm Beach, together with their officers, agents, employees, contractors, parking vendors, and all persons acting in concert with them, be immediately enjoined from issuing or enforcing parking citations, directing towing, demanding payment, assessing penalties, or otherwise enforcing parking restrictions within the Due Process Free Parking Zone at any location where enforcement is based on the challenged non-conforming two-sticker assembly signage, so as to restore the pre-violation status quo during the pendency of this action.

2.      Within seven days of the Court's order, Defendants shall remove from all enforcement locations within the Due Process Free Parking Zone the non-conforming two-sticker assemblies challenged in this Motion and shall cease using any such assembly as a basis for

14

citation, towing, payment demand, or other parking enforcement action within that zone. The enforcement stay imposed by paragraph 1 above shall remain in full effect throughout this period and until further order of the Court.

3.    Within fourteen days of the Court's order, Defendants shall file with the Court and serve on Plaintiff all documentation they contend establishes APL certification for any parking sign they claim constitutes an official traffic control device for parking enforcement purposes within the Due Process Free Parking Zone.

4.    The Court shall set an expedited briefing schedule under which Defendants must file any response within seven days of the Court's order, and Plaintiff may file a reply within three days thereafter.

5.    Pursuant to Fed. R. Civ. P. 65(c), any security required should be waived or set at a nominal amount because the requested injunction requires only cessation of challenged enforcement activity and removal of non-compliant devices within the Due Process Free Parking Zone, and thus serves only to preserve the pre-violation status quo rather than impose compensable hardship from any lawful activity being restrained.

This motion seeks targeted, immediate relief for the Due Process Free Parking Zone only. Whether the enforcement deficiency identified herein applies with equal force to identical enforcement architecture operating throughout the balance of the Southern District of Florida is a question the Court should address in subsequent proceedings.

Plaintiff further respectfully requests that the Court set this Motion for an expedited hearing at the earliest available date.

Respectfully submitted,

Kerry Lutz, Plaintiff pro se
305 Eagleton Estate Drive
Palm Beach Gardens, FL 33418
561-408-4444
Appeal2@me.com

Dated: May 1, 2026

**Certificate of Service**

I HEREBY CERTIFY that on May 4, 2026, I served by email the Expedited Motion for Preliminary Injunction and Incorporated Memorandum of Law. Declaration of Kerry Lutz and Proposed Order upon the following attorneys of record.

Respectfully submitted,

Kerry Lutz, Plaintiff pro se
305 Eagleton Estate Drive
Palm Beach Gardens, FL 33418
561-408-4444
Appeal2@me.com

Dated: May 1, 2026

17

**Service List**

**Weiss Serota**
Bryan Siddique — bsiddique@wsh-law.com
Daniel L. Abbott — dabbott@wsh-law.com
Erica Hausdorff — ehausdorff@wsh-law.com

**City of West Palm Beach**
Kevin Michael O'Brien — kobrien@wpb.org

**Johnson Anselmo**
Hudson C. Gill — hgill@jambg.com
Mariela E. Metkacik — mmetkacik@jambg.com

**City of Riviera Beach**
Jason Tracey — jtracey@rivierabeach.org

**Jones Foster**
Joanne M. O'Connor — joconnor@jonesfoster.com
Michael B. Habib — mhabib@jonesfoster.com

**Hall Booth Smith**
John D. Heffling — jdheffling@hallboothsmith.com

**Gordon Rees Scully Mansukhani**
Leonor Maria Lagomasino — llagomasino@grsm.com

**Sioli Alexander Pino**
Shea Corey Kleinman — sheakleinman15@gmail.com

**Rumberger Kirk & Caldwell**
Samantha Duke — sduke@rumberger.com
Daniel Gerber — dgerber@rumberger.com

**Israel, Israel & Associates, P.A.**
David B. Israel — disrael@israellawfl.com

18